ALEXANDER M. CHEMERS, CA Bar No. 263726
zander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

ORI LAVI, CA Bar No. 355035
ori.lavi@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810

Attorneys for Defendant
STEWART TITLE GUARANTY COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BELYNDA TURNER-JONES, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

STEWART TITLE GUARANTY COMPANY, a Texas Corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 8:26-cv-02286

**DEFENDANT STEWART TITLE GUARANTY COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of Antouanette Gudino and Ori Lavi in Support of Removal]

Complaint Filed: June 18, 2026
Trial Date: None

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF BELYNDA TURNER-JONES AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Stewart Title Guaranty Company ("Defendant" or "STGC"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendant states as follows:

## I. <u>THE STATE COURT ACTION</u>

1. On June 18, 2026, plaintiff Belynda Turner-Jones ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Orange, entitled *Belynda Turner-Jones, individually, and on behalf of all others similarly situated, Plaintiff, vs. Stewart Title Guaranty Company, a Texas Corporation; and DOES 1 through 10, inclusive, Defendants,* which was assigned case number 30-2026-01580348-CU-OE-CXC (the "State Court Action"). The State Court Action was assigned to the Honorable Melissa R. McCormick in Department CX105, designated complex, and the initial Case Management Conference is set for October 15, 2026.

2. The Complaint brings putative class claims for the alleged: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Compensation; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Periods; (5) Failure to Indemnify Necessary Business Expenses; (6) Failure to Timely Pay Final Wages at Termination; (7) Failure to Provide Accurate Itemized Wage Statements; and (8) Unfair Business Practices (Business and Professions Code Section 17200 *et seq*.)

/ / /

3. On July 16, 2026, Defendant was served, through its service for agent of process, with the Summons, Complaint, and Civil Case Cover Sheet. These documents were the initial process and pleadings received by Defendant setting forth the claims upon which this action is based. (*See* Gudino Decl., ¶ 3.) A true and correct copy of the Complaint served on Defendant is attached hereto as **Exhibit A** to this Notice of Removal. (*Id.)*

4. True and correct copies of all other processes, pleadings, and orders served on Defendant are attached as **Exhibit B** to this Notice of Removal. (*See* Gudino Decl., ¶ 5.)

5. True and correct copies of all orders or notices filed, served, or entered by the Court in the State Court Action are attached as **Exhibit C** to this Notice of Removal. (*Id.,* ¶ 5.)

6. In accordance with 28 U.S.C. Section 1446(a), Exhibits A-C represent the entirety of the process, pleadings, or orders served on Defendant in the State Court Action.

7. Plaintiffs have not yet identified any of the fictitious "Doe" Defendants identified in the Complaint, and the citizenship of the "Doe" Defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987).

8. On August 14, 2026, Defendant timely filed and served the Answer to the Complaint in the Orange County Superior Court. A true and correct copy of the Answer is attached as **Exhibit D** to the Notice of Removal. (Lavi Decl., ¶ 4.) Defendant has not served or been served with any other process, pleadings, or orders in this action other than Exhibits A through C to the Notice of Removal.

9. This Notice is Timely. This Notice of Removal is timely as it is filed less than one year from the date this action was commenced and within 30 days of service upon the Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999) (30-day deadline to remove commences

upon service of the summons and complaint).

10. Service of the Summons and Complaint on Defendant was effective July 16, 2026. Because Defendant filed this removal within 30 days of service of the Summons and Complaint, removal is timely.

## II. <u>THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

11. This action is one over which this Court has original jurisdiction under the Class Action Fairness Act ("CAFA") and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A. <u>The Size of the Putative Classes Exceeds 100</u>

12. Plaintiff identifies her primary class as: "All persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." (Ex. A [Compl.] ¶ 23.)

13. More than 100 current and former employees fall within Plaintiff's proposed Class. (*See* Gudino Decl., ¶¶ 12–14.) Defendant's business records show at least 200 hourly, non-exempt California employees during the four-year class period from June 18, 2022, through August 12, 2026. (*Id.*) Although Defendant denies that class treatment is appropriate, Plaintiff's proposed class, if certified, would consist of more than 100 members.

### B. <u>The Parties Are Diverse</u>

14. <u>Citizenship of Defendant</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The

United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." (*Id.* at 1184.) The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." (*Id.*)

15. At all times on or after the date this action was filed, Defendant has been a corporation incorporated under the laws of Texas. Defendant also has its principal place of business and corporate headquarters in Houston, Texas, where its officers direct, control, and coordinate Defendant's activities. (Gudino Decl., ¶¶ 6–8.)

16. STGC is not incorporated in California, and its headquarters, executive offices, and principal place of business are not located in California either. (Gudino Decl., ¶ 8.)

17. <u>Citizenship of Plaintiffs and Putative Class Members</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

18. Plaintiff is a California citizen. Plaintiff alleges that she is a California resident and that she worked for Defendant in Orange County, California, as an hourly, non-exempt Senior Commercial Title Assistant from approximately December 2025 to approximately March 2026. (Ex. A [Compl.] ¶ 7.)

19. Members of the proposed Class, who by definition are, or were, employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of

employment" an important factor weighing in favor of citizenship). Plaintiff asserts that she and other non-exempt employees were often not afforded all protections and rights conferred under the California Labor Code, and that Defendant operates a title insurance business in California, including in Orange County, where Plaintiff worked. (Ex. A [Compl.] ¶¶ 3, 7, 14–20.) It is implausible that the putative class members, all of whom worked in California, were instead citizens of Texas.

20. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) is met because Defendant is a citizen of Texas, while Plaintiff and/or members of the putative class are citizens of California.

**C. <u>The Amount in Controversy Exceeds an Aggregate of $5,000,000</u>**

21. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing Defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

22. In considering the evidence submitted by the removing Defendant, a court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the

complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3. Finally, at removal, a Defendant is permitted to rely on reasonable assumptions to calculate the amount in controversy, including calculations based on a reasonable violation rate when the employer is alleged to have committed various violations. *Perez v. Rose Hills Co.*, 2025 WL 811096 (9th Cir. 2025).

23. While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to class-wide treatment, or that Plaintiffs or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

24. As described further below, the amount in controversy exceeds the jurisdictional minimum of $5,000,000.[1]

**1. <u>Defendant's Estimate of the Amount in Controversy</u>**

25. In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate of the amount in controversy based on damages and attorneys' fees sought by Plaintiff as a result of the alleged: (1) failure to provide meal periods and pay missed meal-period premiums; and (2) failure to authorize and permit rest periods and pay missed rest-

---

[1] To the extent Plaintiffs claim the amount in controversy is less than $5,000,000.00, the Court must disregard this contention. *See Thompson v. Fastaff, LLC*, No. 2:22-CV-3584-SVW-MAA, 2022 WL 4109450, at *9 (C.D. Cal. Sept. 8, 2022) ("Plaintiff may not escape a reasonable estimate simply by stating in their complaint that the claims will not exceed $5 million."); *Anderson v. Cindys Cleaning Servs. LLC*, No. CV204569PSGMRWX, 2020 WL 5057472, at *3 (C.D. Cal. Aug. 27, 2020); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928–29 (9th Cir. 2019) (generally providing that putative class representatives may not bind absent class members about the amount in controversy prior to certification); *Standard Fire Ins. Co.* 568 U.S. at 594.

period premiums, together with recoverable attorneys' fees.

26. Because the amount in controversy for these two claims exceeds the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other causes of action, as alleged in the Complaint. That said, Defendant reserves the right to do so in opposition to any remand motion.

### 2. Plaintiff's Claim For Meal Break Violations

27. In her Third Cause of Action, Plaintiff alleges that Defendant failed to provide legally compliant meal periods in violation of California Labor Code §§ 226.7 and 512. (Ex. A [Compl.] ¶¶ 49–52.) Plaintiff alleges regular and systemic failures to provide meal periods.

- Plaintiff alleges that Defendants regularly failed to provide both meal periods required by California law and made it impossible or impracticable to take uninterrupted meal periods. (Ex. A [Compl.] ¶ 51.)
- Plaintiff further alleges that Class Members are entitled to one hour of additional wages at the regular rate for each workday they were not provided all required meal periods. (Ex. A [Compl.] ¶ 52.)

28. Plaintiff alleges that Defendant's acts constitute unfair competition within the meaning of Business and Professions Code Section 17200. (*Id.*, ¶¶ 79-80.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for Plaintiff's meal break claim is based on a four (4) year limitations period.

29. Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. Labor Code § 226.7(c). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7,

2008).

30. **Plaintiff alleges that every shift was eligible for meal periods.** Hourly employees in California are entitled to an off-duty meal period on every shift that exceeds five hours. California Labor Code § 512. Here, Plaintiff alleges that she and other hourly employees worked in excess of five hours on each shift. Specifically, "[t]hroughout the statutory period, Plaintiff and the Class worked more than 8 hours in a workday and more than 40 hours in a workweek." (Ex. A [Compl.] ¶ 15.) She also alleges that she was "typically scheduled to work 5 days in a workweek, and typically in excess of 8 hours in a single workday." (*Id.* at ¶ 13.) Thus, Plaintiff alleges that there could be at least 5 meal violations for each week fo work.

31. **Plaintiff's factual allegations support a 100% violation rate.** In her Complaint, Plaintiff alleges that Defendant failed to provide off-duty meal periods to its employees for a variety of reasons. Most significantly, Plaintiff contends that "Plaintiff and the Class were not relieved of all duty during their meal periods" because "Plaintiff and the Class were required to keep their personal cell phones on at all times, including during meal periods, and were required to respond to work requests from supervisors while clocked out during purported meal periods." (Ex. A [Compl.] ¶ 16.) **Consequently, Plaintiff alleges that Defendant <u>never</u> provided its employees with an off-duty meal period, because they were not relieved of all duty.**

32. Where, as here, a plaintiff alleges that an employer's uniform policy and practice denied compliant meal periods throughout the class period, courts accept a violation rate of one violation per shift. *See, e.g.*, *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (accepting a 100% violation rate where plaintiff alleged that "at all material times," the defendant failed to provide putative class members with uninterrupted meal and rest periods); *Dawson v. Hitco Carbon Composites, Inc.*, 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016)

(approving a 100% violation rate based on the allegation that "[a]t all material times," the defendant failed to provide the requisite uninterrupted meal periods and rest periods); *Feltzs v. Cox Commc'ns Cal., LLC*, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (approving a 100% violation rate where the plaintiff alleged uniform policies, practices, and procedures that caused violations of California's break laws).

33. Based on a review of Defendant's business records, during the relevant period the putative class members worked an aggregate of at least 20,000 workweeks and received an average hourly rate of at least $30.00. (Gudino Decl., ¶¶ 12-14.)

34. Based on Plaintiff's allegations, and assuming one meal-period violation per shift (five per workweek), Defendant's calculation of the amount placed in controversy based on Plaintiff's claim for failure to provide legally compliant meal periods is **at least $3,000,000**. The computation is based on calculations that, during the relevant period, putative class members worked **at least** 20,000 workweeks, that there were five meal-period violations per workweek, and that each putative class member earned an average hourly rate of $30.00.[2] (Gudino Decl., ¶¶ 13-14.)

35. Consequently, the amount placed in controversy based on Plaintiff's allegations in support of the Meal Period Claim is at least **<u>$3,000,000</u>** (20,000 workweeks × five meal-period violations per workweek × the $30.00 average hourly

[2] Relying on the average hourly rate of pay is well-accepted for calculating the amount placed into controversy for meal and rest period claims. *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *2 (C.D. Cal. Apr. 9, 2019) (meal and rest); "[T]he average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation"; *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation").

rate).

**3. <u>Plaintiff's Claim For Rest Break Violations</u>**

36. In her Fourth Cause of Action, Plaintiff alleges that Defendant failed to authorize and permit putative class members to take legally compliant rest periods in violation of California Labor Code § 226.7. (Ex. A [Compl.] ¶¶ 53–56.) Plaintiff alleges regular and systemic failures to provide rest periods.

- Plaintiff alleges that Defendant failed to authorize and permit her and Class Members to take timely and duty-free rest periods, and made it impossible or impracticable to take uninterrupted rest periods. (Ex. A [Compl.] ¶¶ 54–55.)
- Plaintiff further alleges that Class Members are entitled to one hour of additional wages at the regular rate for each workday they were not provided all required rest periods. (Ex. A [Compl.] ¶ 56.)

37. Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

38. **Plaintiff's factual allegations support a 100% violation rate.** In her Complaint, Plaintiff alleges that Defendant failed to authorize and permit off-duty rest breaks periods to its employees for a variety of reasons. As with her meal period allegation, Plaintiff contends she and other employees were not relieved of all duty during their rest breaks, either because "Plaintiff and the Class were required to remain on premises during rest periods" or because "Plaintiff and the Class were required to keep their personal cell phones on at all times, including during rest

periods, and were required to respond to work requests from supervisors while on their purported rest periods." (Ex. A [Compl.] ¶ 17.) **Consequently, Plaintiff alleges that Defendant <u>never</u> provided its employees with an off-duty rest period, because they were not relieved of all duty.**

39. Courts accept a 100% rest period violation rate when there are allegations of widespread failures to provide rest periods, as there are here. *See, e.g., Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (accepting a 100% rest period violation rate where plaintiff "alleges that 'at all material times,' Defendant failed to provide putative class members with uninterrupted meal and rest periods"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (approving 100% rest period violation rate where Plaintiff alleges that Defendant maintained uniform policies, practices, and procedures that caused violation of California's rest period laws"); *Dawson v. Hitco Carbon Composites, Inc.*, 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (approving 100% rest period violation rate based on allegation that "[a]t all material times," Defendant failed to provide the requisite uninterrupted meal periods and rest periods"); *Feltzs v. Cox Commc'ns Cal., LLC*, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate).

40. Based on a review of Defendant's business records, during the relevant period the putative class members worked an aggregate of at least **20,000** workweeks and received an average hourly rate of **$30.00.** (Gudino Decl., ¶¶ 13-14.)

41. Based on Plaintiff's allegations, and assuming one rest-period violation per shift (five per workweek), Defendant's calculation of the amount placed in controversy based on Plaintiff's claim for failure to authorize and permit legally compliant rest periods is at least **$3,000,000**. The computation is based on calculations that, during the relevant period, putative class members worked at least **20,000** workweeks, that there were five rest-period violations per workweek, and

that each putative class member earned an average hourly rate of **$30.00.** (Gudino Decl., ¶ 14.)

42. Consequently, the amount placed in controversy based on Plaintiff's allegations in support of her Rest Period Claim is at least **$3,000,000** (20,000 workweeks × five rest-period violations per workweek × the $30.00 average hourly rate).

### 4. Summary of Amount in Controversy.

43. As described above, a conservative estimate of the amount in controversy presented by Plaintiff's meal-period and rest-period claims alone is at least **$6,000,000** based just on the meal period and rest break claims. This amount would further increase based on Plaintiff's other claims, as well as her request for attorneys' fees. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

44. Finally, if the Court disagrees with the violation rates Defendant utilized in its calculations (above) and the Court can identify better assumptions, then the Court should consider the claims under the better assumptions rather than zeroing out the claim. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

## III. COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS

45. Venue is Proper. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Orange is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

46. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

/ / /

47. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Orange. Notice of compliance shall be filed promptly afterward with this Court.

48. As required by Federal Rule of Civil Procedure rule 7.1, STGC has concurrently filed its Certificate of Interested Parties and Disclosure Statement.

Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, STGC requests that the Court issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal.

DATED: August 17, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Ori Lavi*
Alexander M. Chemers
Ori Lavi

Attorneys for Defendant
STEWART TITLE GUARANTY COMPANY